Gant *v.* Drew.

Levi Gant, Plaintiff, *v.* Edwin P. Drew, Defendant.

*Injunction.—Appeal.— Umpqua County.*

The franchise of keeping a ferry does not belong of right to the owner of the soil; but he is entitled, by the statutes, to the preference, if he applies before license is granted to another.

In December, 1851, the Board of Commissioners of Umpqua County granted to the defendant, Drew, the privilege of keeping a ferry over Umpqua River, at the crossing of the road from Winchester to Scottsburg, and fixed the first year's

tax at three dollars. There was no treasurer to whom the money could be paid until April, 1852, and it was not paid until September, 1853. Whether a bond was given, or a license issued, does not appear. In April, 1852, Drew again applied, and the year's tax was fixed at twenty-five dollars, which was paid, and a license issued for the ensuing year.

The plaintiff, Gant, who owned the land, applied for a license at the same time, and was denied; but in April, 1853, he obtained a license for a year, and paid the tax, but whether he gave a bond does not appear. Drew continued to run his boat until enjoined at the suit of Gant. The cause was heard before Judge Deady, at the September term, 1853, for Umpqua County, when the injunction was dissolved, and the bill dismissed, and the plaintiff appealed.

*Chapman & Logan,* for appellant.

*Stratton & Harding,* for appellee.

OLNEY, J. The plaintiff claims the right to keep all ferries established on his land, as incident to, and part of his estate in the soil; that the statute recognises but does not create this right; and that the grant of it to a stranger, when the proprietor was an applicant, was void.

Judge M'Lean, in *Bowman* v. *Wathen,* 2 *McLean,* 376, lays down this doctrine in strong terms. In speaking of the owner of land in Indiana, bounded by the Ohio River, he says, "he has the right of fishery, of ferry, and every other right, which is properly *appurtenant to the soil;* and he holds every one of these rights by as sacred a tenure as he holds the lands from *which they emanate.*" He says, "this right of ferry is a common law right, everywhere recognised in this country, and that the statute was intended to rescue it from violation." If, by the *right of ferry,* he means the right which, as he says, every man has "to keep ferry-boats for his own convenience upon his own land," the proposition is not only a truism, but was out of place, for the case did not

bring in question this right of the private use of one's own soil, by passing over it both by land and water, but the right to *keep a public ferry* for toll; and this latter was not necessarily in issue, as the case turned upon another point. He certainly speaks of the right to keep public ferries, when he says, "Some of these rights, which *appertain* to the *soil*, are of a *public nature*, and the *use* of them consequently subjects of legal control. Of this character is the right of ferry." His proposition, therefore, is, that the right to keep a public ferry for toll is part of the proprietor's estate in the soil.

This proposition cannot be maintained. There is a toll traverse known to the common law, or rather to the local customs of England, which is paid for the privilege of passing with beasts in certain places, not highways, when there is no *right* to pass without the proprietor's consent; and if it were not forbidden by our statute, doubtless *ferries* might be established here on a similar principle, making the toll a matter of contract, until it should grow into a custom. And if a *public ferry* should be established where there is no highway, the owner *would be entitled* to compensation for the use of the land, but not for the ferry, which was never his, but which is a thing newly located upon occasion, by act of the government, for the use of the public.

The right to keep a public ferry for toll is a franchise, which has no existence in England, until created by the king's license, or other proper authority. If held by prescription, an ancient grant is presumed. (8 *Bac. Abr.* 114; 1 *Black. Com.* 37, 38.)

It is the same in this country. Chancellor Kent says, that "franchises are certain privileges conferred by grant from the government, and vested in individuals;" and he enumerates among them, " the privilege of making a road, or establishing a ferry, and taking tolls for the use of the same." If they are created by public grant, then they do not emanate from the land. No precedent is cited for the rule laid down in *Bowman* v. *Wathen;* nor has any like case or *dictum* been cited here. On the contrary, in *Mills* v. *The*

*Commissioners,* 3 *Scammon's Rep.* 53, ferries are held not to appertain to the riparian owners.   In the *Nashville Bridge Co.* v. *Shelby,* 10 *Yerger,* 280, the owner is held not to be entitled, as a matter of right, to keep the ferry.   This right has probably been inferred from some ancient decisions in England, which were carelessly followed at an early day by a few cases in this country, that none but the owners of the soil have a right to use the highways for ferry landings. (*Cooper* v. *Smith,* 9 *Sergt. & Rawle's Rep.* 26.)   But the reverse of this doctrine was settled in England by the case of *Peter* v. *Kendall,* 6 *Barn. & Cress. Rep.* 703 ; and the doctrine of this case has been generally received in this country.   Chancellor Kent says, that the right to use the highways for ferry landings, without the consent of the owners of the soil, "is the most reasonable conclusion upon the right to the use of a public highway to which a ferry is connected."

A public ferry can seldom, if ever, be required, except where a highway terminates at, or extends across the water.   In the present case the ferry is in the public road, where it crosses the Umpqua River ; and if the right to keep it for toll is not inherent in the plaintiff, as proprietor of the soil, and the highway may be used for landings without his consent, it follows that defendant's ferry is no violation of the plaintiff's rights as such proprietor.   The conclusion at which we have arrived, by the examination and comparison of the few authorities within our reach, is likewise the result of reasoning from first principles.   When a road crosses a stream, or body of water, it is not interrupted, but the water, and the soil beneath it, within the limits of the road, are a continuous part of the road ; and a bridge or ferry is also a part of the road as much as the embankments, excavations, pavements, causeways, and other artificial improvements for the ease of travel.   The owner of the soil, being paid therefor, or having waived compensation, has no interest, except as a citizen at large, in the road as such, including its bridges, ferries and other betterments.   If he has the exclusive right

to land ferry-boats on the shores, how can he be denied the exclusive right of placing the ends of a bridge upon them; or the exclusive right of being employed for tolls or other reward to make and keep in repair any other work or improvement that may be needed in the road elsewhere upon his land? It might be expedient to favor him with the preference in all these cases; and this the statute does in respect to ferries; but to recognise such a *right* would be as unreasonable in principle as it is unsupported by authority.

Rejecting the plaintiff's claim as proprietor of the soil, we come next to consider whether he has been invested with the franchise by the action of the Board of Commissioners. On this point it is only necessary to say, that the order under which he claims is like that in *Cason* v. *Stone*, decided at this term, which we held to be merely void.

The plaintiff having no title either at common law, or under the statute, the decree dismissing the bill must be *affirmed.*