## KNOTT BROS. *v.* JEFFERSON STREET FERRY CO.

FERRIES—APPLICATION FOR LICENSE—ADVERSARY PARTIES.

The owners of a ferry, without exclusive privileges, are not thereby entitled to appear as adversary parties in a proceeding in the county court on the application of another for license to keep a ferry at a different point on the same stream. Nor can they question the regularity of such proceeding by writ of review.

The owner of a tract of land, conveyed by metes and bounds, without reference to any street, acquires no title to the soil in any adjoining street subsequently dedicated by his grantor.

The preference to keep a ferry, given by statute to the owner of the land adjoining or embracing the lake or stream where such ferry is proposed to be kept, does not belong to the grantees of such owner of an exclusive right merely to use his land for landing places for a particular ferry, other than the one proposed.

APPEAL from Multnomah.

This was a writ of review, issued from the circuit court for Multnomah county, upon the petition of the appellants, for the purpose of examining the record of the county court of that county in a proceeding for granting a ferry license, on the application of the respondent. The line of the proposed ferry was across the Willamette river, between the foot of Jefferson street, in Portland, and the foot of U street, in East Portland. Upon the return of the writ, with certified transcript annexed, the cause was heard in the circuit court, and the decision of the county court affirmed, with costs to the respondent; and from this decision an appeal has been taken to this court.

The record discloses the following facts: Jefferson and U streets terminate on the opposite sides of the Willamette river, which forms the boundary between the two cities. They are both public streets. The intersection of each with the river has been designated as a "ferry landing" by the proper city authority. The Jefferson Street Ferry Company, having been duly incorporated for the purpose, applied to the county court for a license to keep a public ferry between said

points. Proof of posting notices of intention to apply, as required by section 43, chapter 50, Miscellaneous Laws, was duly presented with such application. The necessity for the establishment of a public ferry at the place designated, was sufficiently shown by the facts set forth in the application.

The appellants were not served with a written notice of the respondent's intention to apply for such license, as was required by section 42 of the same chapter, in the case of adjoining owners, resident within the county; but they both appeared in the cause and opposed the application at every step in the proceeding. They claimed that a ferry was not necessary at that point, and its establishment would unnecessarily annoy and injure them in their business as proprietors of another ferry across the same stream, at a short distance below; but that if the county court should determine otherwise, then, as riparian owners on the east bank of the river, at the terminus of U street, they were entitled, under the statute, to have the license issued to them, in preference to the respondent, which did not own any land adjoining, or possess any riparian rights on either bank, and they asked accordingly, that if a ferry at that point should be deemed necessary, the license to keep it should be granted to them. The respondent made no claim as a riparian owner.

In support of their claim, appellants produced and offered in evidence, before the county court, three deeds from James B. Stephens and wife to Joseph Knott, and two deeds from the latter to themselves, conveying all the interests acquired from Stephens and wife by the three deeds first mentioned. The execution of these several instruments, and the appellants' ownership of whatever interests or rights passed under them from Stephens and wife, were not contradicted.

In 1852, the legislature of Oregon granted Stephens a charter for a ferry on the Willamette river, at a point about one-half mile below the location of the proposed ferry, with exclusive ferry privileges on the river for a distance of one mile each way, for the period of ten years. On March 25,

1861, Stephens being still the owner of such ferry and chartered rights, and also the owner, in fee, of the land adjoining the river, on the east side, for a distance of a mile and a half embracing both the landing of said ferry and the terminus of U street, joined with his wife in executing the first of said deeds in favor of Joseph Knott, for the consideration of eighteen thousand dollars. On the 22d day of the following January, they executed the second of these instruments, for a nominal consideration, and for the avowed purpose of more fully expressing their intention in executing the first.

These deeds convey to Joseph Knott the ferry then operated by Stephens under said charter (which is the same now owned and operated by the appellant), the ferry boat, etc., then used in connection therewith, all his rights and privileges under said charter, some additional rights on the west bank, and the exclusive right for the purpose of landing and carrying on said ferry along the entire river front of his said land; Knott to select such landings as he might desire to use with said ferry, the same to be at the terminus of some street or public road created by law, and at no other place. The third deed from Stephens and wife to Joseph Knott, was executed July 5, 1862, and conveyed the title, in fee, to a tract of one and 6-100 acres, by metes and bounds, which adjoins U street on the north, and fronts 262 feet on the river below. At the time of this conveyance there was no street where U street is now located, nor was there any until June 8, 1869, when it was dedicated to the public by Stephens, who still remained the owner of the soil, by his filing and causing to be recorded in the office of the county clerk of Multnomah county a plat of his addition to the city of East Portland, with said U street designated thereon as a public street.

W. S. Ladd was the owner of the block adjoining the foot of U street on the south, and fronting on the river immediately above. He was properly served with written notice, appeared and objected to the grant of a license to respondent, but neglected to apply for its issuance to himself.

Upon this state of facts, the county court, being satisfied that a ferry was necessary at the place proposed, granted a license to keep the same, for a term of five years, to the respondent, which appellants' claim was erroneous, as was also the judgment of the circuit court affirming the same.

*H. T. Bingham, C. B. Bellinger, N. B. Knight and Seneca Smith*, for appellants.

*J. G. Chapman and William R. Willis*, for respondent.

By the Court, Watson, J.:

The most important question to be determined here, arises upon the construction of the deeds from Stephens and wife to Joseph Knott, of March 25, 1861, and January 22, 1862. What interests did they convey? The arguments of appellants' counsel are predicated on the assumption that they conveyed all the rights which the grantors had, as riparian owners, to the use of their land for ferry landing purposes. In this, we think, they are clearly wrong. There is but one ferry mentioned in these deeds. The perpetual and exclusive right to the use of the river front for ferry landing places, attempted to be conveyed, is in connection with this particular ferry, and relates to none other. For the purpose of landing and carrying on said ferry, as aforesaid, such landing place or places "to be at the terminus of some street, or public road created by law, and at no other place."

This is the very language of these instruments, and leaves no doubt as to the intention of the parties. But it may be said, that, although limited by its connection with a particular ferry, the right was nevertheless intended to be exclusive. Conceding this, then if appellants could avail themselves of its exclusive character for the protection of their interests in that ferry, they must do so by preventing infringements, and not by claiming their benefits. It is quite clear that they derived through these deeds no rights to use any portion of the river front, for landing places, for other ferries than the one specified.

If for any reason they may not be able to enforce the exclusive right intended to be conveyed, by preventing the use of the river front for landings for other ferries which competent authority may deem necessary for the public convenience to establish there, with what appearance of consistency can they claim the distinct right to use it for landings for such other ferries? The legal right to so use it would constitute an easement, separate and distinct from that conferred by the deeds in question, and remained in the grantors after the execution of such deeds. The appellants, therefore, were not the owners of this right, and their case does not come within the principle laid down in *Bowman's Devisee & Burnly* v. *Walthen, et al.*, 2 McLean, 376, relied upon by them. That decision, as we understand it, is to the effect that a statute similar to ours, giving a preference to keep a ferry to the adjoining owner, is based upon the right to use the bank for landing purposes, and designed to protect and secure to such owner the benefit of such right, and that the owner thereof, though it be " separated from the fee in the soil," should be deemed the adjoining owner " within the policy and language of the statute."

In the case at bar, the appellants not being the owners of any right to use the river bank for a ferry landing in connection with the ferry about to be established, or any other ferry except the one transferred by said deeds, they cannot, under this authority, be deemed adjoining owners, " within the policy and language " of our statute, which gives a preference to keep a ferry to the owner of the land embracing or adjoining the lake or stream where the proposed ferry is to be established, if he make proper and reasonable application therefor. (Sec. 42, chap. 50, Mis. Laws.)

We deem it useless to prolong the discussion of this point, and will now briefly notice some others presented in the argument on behalf of the appellants.

The record discloses the fact that the appellants were the owners of a ferry on the same river, and about half a mile

below the location of the proposed ferry, and that the establishment of the proposed ferry would materially diminish the profits of their business. As this ferry franchise, derived through the Stephens' charter of 1852, did not, at the date of respondent's application, have any exclusive privileges attached to it, we cannot perceive how the mere facts of their ownership in a rival ferry, and the consequential damage which would probably result from a diminution of its profits upon the establishment of another ferry across the same stream, and within such a distance, could give them any standing as parties to the proceeding before the county court, or any right to have the same reviewed for alleged errors by the circuit court. (*Price* v. *Knott*, 8 Oregon, 438; *Charles River Bridge* v. *Warren Bridge*, 11 Pet., 496; *Lawless* v. *Menefee*, 20 Ark., 567; *Wiswell* v. *Wandell*, 3 Barb. Ch., 312.)

Their franchise not being coupled with exclusive privileges, was no obstacle in the way of granting licenses by the county court for as many new ferries across the same stream as might become necessary for the public convenience. The grant of a license to keep another ferry, at a different point on the same stream, was no infringement of any right connected with or growing out of their franchise. If the establishment of such other ferry might have the effect, incidentally, of diminishing their profits, this fact could not be considered by the county court in such a proceeding. It would afford no legal ground for refusing the application. It would give them no particular interest in the controversy, recognized by law, to represent which they would be entitled to appear as adversary parties. In contemplation of law they had no particular right or interest which could be infringed by granting the license applied for in pursuance of the statute. Nor is there a single statutory provision which sanctions the idea of their being made parties, under any circumstances, simply on account of their proprietorship in such adjacent ferry. Having no individual right which could be adjudicated in the proceeding, they could not claim, as adversary parties, to

question its regularity, as they otherwise might by writ of review, when substantial rights are involved.

Their claim as adjoining owners, based on their title to the tract or block on the north side of U street, is not supported by the facts which appear in the record. This tract was conveyed by Stephens and wife to Joseph Knott, under whom appellants claim title, by metes and bounds, seven years before U street was dedicated by Stephens, and at a time when the dedication of that street could not have been in contemplation of the parties to such conveyance. At least there is nothing in the record to indicate that it was. It would be absurd to conclude, under such circumstances, that it was intended the grantor should take the title to the middle of U street, or that by such subsequent dedication, the title to the centre of the street enured to the owner of this block, whoever he might be. (*Peck* v. *Smith*, 1 Conn., 127; *Watrous* v. *Southworth*, 4 Conn., 309).

Upon every material point, the conclusion we have reached is adverse to the claim of the appellants. We fail to discover in the record any substantial rights belonging to them. which were involved in the proceeding in the county court, on respondent's application for a ferry license which was awarded to it. They were therefore not entitled to the remedy by writ of review.

Judgment affirmed.