## HOLLINGSWORTH *v.* PARISH OF TENSAS.[1]

*(Circuit Court, W. D. Louisiana.* 1883.)

1. CONSTITUTIONAL LAW—TAKING PRIVATE PROPERTY FOR PUBLIC USE.

   The plaintiff, owner of riparian property, whose lands adjacent to the Mississippi river are alleged to have been taken and damaged for public-*levee* purposes by the defendant, a parochial corporation, *held* to have a *right of action* for the recovery of just and adequate compensation therefor.

2. SAME—INDEMNITY.

   Private property can only be *taken, appropriated,* or *damaged* for public use through the exercise of the single principle of eminent domain, which in all cases carries with it the right of just indemnity.

3. SAME—POLICE POWER OF STATE—LEVEE.

   Under the exercise of its general police power, which extends only to the *regulation* of the owner's use and dominion of private property, the state of Louisiana cannot, for *levee* or other public purposes, *take, appropriate,* or *damage* private property so as to *deprive* the owner of its dominion, use, control, and profits, and especially without due compensation first being paid,—Louisiana state jurisprudence, as contained in the case of *Bass* v. *State,* 34 La. Ann. 494, and other cases, to the contrary.

4. DECISION OF STATE COURTS—WHEN FOLLOWED BY FEDERAL COURTS.

   National courts are required to follow decisions of state courts when they engage in giving effect to, or the interpretation or construction of, state statutes or local laws, but not when employed in giving effect to general principles of law. So, when a decision of the supreme court of Louisiana declares the right in the legislature to authorize private property to be taken or damaged, or its use appropriated, without compensation, for public purposes, under the general police power, or other implied powers of government, it is a dealing with general principles of law, and places no restraint on the federal court.

[1] Reported by Talbot Stillman, Esq., of the Monroe, Louisiana, bar.

On Exception, no Cause of Action.

*W. R. Young,* for plaintiff.

*W. W. Farmer* and *T. P. Clinton,* for defendant.

BOARMAN, J.     The petition shows that plaintiff is the owner of land adjacent to the Mississippi river, in the parish of Tensas.     The defendant, a parochial corporation, caused a levee to be constructed on her land, a distance from the river front and behind her dwelling, store-house, and other houses.     She alleges that she has been damaged substantially as follows:  That in 1880 the police jury of Tensas parish, by an arbitrary and wanton abuse of the powers conferred on them by law, and upon the pretext of constructing a new levee, abandoned the old one, by which her plantation was protected from overflow, and constructed a line of levee on the back lands of her plantation, at a distance of a mile from the river front; that for the construction of this new levee about 50 acres of plaintiff's land, worth $4,000, was taken and damaged, against her protest and consent, without notice to her, and without the compensation provided for in article 159, state constitution; that between the new levee and the old one, on the river front, about 250 acres of valuable land, worth $25,000, was thrown or left out, and exposed to the aggressions and damages of the overflows; that the new levee cuts off and damages the natural drainage of her plantations, and renders much of the land valueless and unfit for cultivation; that she owns a public river landing, and has a store-house at or near it; that in consequence of the location and building of the new levee this landing and store are often inaccessible to the neighboring people who trade there; that by the action of the police jury herein complained of she has been deprived of all protection afforded her by the public-levee system of the state, to carry on which she is annually taxed, and a great portion of her plantation is exposed to yearly overflows; that the rain-water drainage having been damaged and destroyed by the new levee, her plantation is greatly damaged in value and for cultivation; that without such new levee her lands were exempt from overflow except at long intervals.

In the argument defendant claims that the law imposes a service for building levees on all lands adjacent to the Mississippi river; that in constructing the levee this service has been exercised only to the extent and in the manner provided by law, and the damage alleged is *damnum absque injuria.*

Defendant cites several articles of the Civil Code, and relies for relief particularly upon articles 660 and 661, and the subsequent levee laws:

Art. 660. "Services imposed by law are established either for public utility or for the utility of individuals."

Art. 661. "Services imposed for public or common utility relate to the space which is to be left for public use by the adjacent proprietors on the shores of navigable rivers, and for making and repairing levees, roads, and

other public or common works. All that relates to this kind of servitude is determined by laws and particular regulations."

Defendant claims that certain laws relating to *"this kind of servitude"* are now operative laws in this state. If so, it is not essential that they should now be quoted.

For convenience I shall quote several articles of the Code which relate to the subject-matter of this action:

Art. 2604, Civil Code. "The first law of society being that the general interest shall be preferred to that of individuals, every individual who possesses, under the protection of the laws, any particular property is tacitly subjected to the obligation of yielding it to the community, whenever it becomes necessary for the general use."

Art. 2605, Civil Code. "If the owner of a thing necessary for the general use refuses to yield it, or demands an exorbitant price, he may be divested of the property by the authority of law."

Art. 2606, Civil Code. "In all cases a fair price should be given to the owner for the thing of which he is dispossessed."

Art. 489, Civil Code. "No one can be divested of his property unless for some purpose of public utility, and on consideration of an equitable and previous indemnity, and in a manner previously prescribed by law."

Art. 2294, Civil Code. "Every act whatever of man that causes damage to another, obliges him by whose fault it happens to repair it."

Art. 156, Const. La. A. D. 1879. "Private property shall not *be taken nor damaged* for public purposes without just and adequate compensation being first paid."

Defendant insists that I should, on the trial of this exception or demurrer, follow the decisions of the state courts, and cites especially the decision in the case of *Bass* v. *State of Louisiana*, 34 La. Ann. 494. Strong analogies are apparent between this and that case; but my views of that case, as well as of the several others cited by counsel, or rather my opinion of the character of the law upon which these cases seem to have been decided, forbids me to adopt the persuasive suggestion. These decisions do not impress me with the belief that the issues decided by them are such as may be determined by interpreting and giving effect only to laws of a strictly local nature. To me it appears that the court in the *Bass Case*—and as this is presented as the strongest case I shall now refer only to it—was engaged in giving effect to general principles of law, and especially to the powers of a legislature to authorize private property to be taken or damaged, or its use appropriated, without compensation, for public purposes, under the police or other implied powers of government. In trials at law the national courts are required, substantially, to follow the decisions of the state courts in cases where the laws apply. These decisions do not make the laws; but they are considered the best evidence of what the law is in a state where the decisions cited "show a case of statutory construction."

The rule adhered to by the supreme court seems to be that section 34, judiciary act 1789, should be observed only where the decisions

cited were or are based on the statutes or laws of a state which "fix rights to things intraterritorial in their nature, or which fix rules of property." 18 Wall. 584; 16 Pet. 1; 18 How. 520; 14 Wall. 665; 92 U. S. 494.    With this rule in view, I will further consider defendant's suggestion.    Defendant claims that the state, in articles 660 and 661, Civil Code La., and subsequent levee laws, has imposed a service, in the interest of public utility, on all lands adjacent to navigable rivers, and that now such lands may be taken or damaged, or their use appropriated, for the construction of levees, without compensation.    It may be that these articles of the Code, which can hardly be said of themselves to impose any service on such lands, have been supplemented by subsequent levee laws which impose the service claimed by the defendant.    But if they do, in law, burden plaintiff's lands with such service, I think no court could give the effect claimed— that is, that land may be taken or damaged for public purposes, so as to divest the owner of its use, profits, and dominion, without compensation—without passing upon general principles of law and jurisprudence which define what sort of a use is a public use; without passing upon the effect, if it has any, of the article 156 of the constitution of 1879; upon what is a "taking" or *damaging* in the meaning of the law; upon whether or not to damage land by constructing artificial works which, *under parochial levee regulations, and in their physical nature*, must depose the owner from all use or profits of the land, is a *damaging* or "taking" which is prohibited without compensation; and without passing upon other questions akin to these, which can be judicially determined only by a resort, on the part of any court trying the case, to general reasoning and legal analogies common to the several states.    In the *Bass Case* plaintiff put at issue, not the right of the legislature to pass articles 660, 661, Civil Code, and supplemental statutes; not the right to take or burden his land in such a way; not the right to dispossess or damage him for the general use,—but he put at issue, above every thing and question, the right to take or dispossess him of his land and its uses, *without compensation, under the lawful exercise of any power* in the state government.

This paramount issue was met and decided adversely to Bass. Could any court have decided this issue for or against him without passing upon the laws and analogies of jurisprudence which concern such public interests as cannot be determined by local laws?

Upon this point I must conclude that whatever may be the nature or extent of the powers or laws upon which the state court refused to allow Bass damages, or whatever may have been the method, compass, or basis of reasoning which lead the court to hold practically that Bass had no cause of action for an invasion of rights protected, as I think, by natural equity, the law of the land, and by the articles of the Code herein cited, I think it must be conceded that such a conclusion was not reached by the court's consideration only of a statutory

case, or giving effect to local laws. Feeling free from the restraint suggested, I shall now consider whether the petition shows a cause of action for this court to hear.

It is said that, under the lawful exercise of *the police powers* inherent in the state, the legislature may authorize the construction of levees, and land for their construction may be taken or appropriated, as in this case, without compensation therefor, and the complaining owner cannot be heard to dispute the authority of the officers building the levee, or dispute *the necessity for the levee, or the necessity for public use of the particular space of land,* nor can he be heard when he alleges wanton injury, and prays the court to control prudentially, for all interests, the officers in their right to take land, even though they should choose to run the levee a distance away from *"the space* which is to be left by adjacent proprietors on the shores of navigable rivers."   It is said that this was substantially announced in the *Bass Case,* where the rules and maxims of law regulating society and property rights, and the principles of government from which the police powers are deduced, were discussed at length by the learned chief justice of the state court.   In that case, many authorities are cited to show that the police powers afford "solid foundation" for articles 660 and 661, Civil Code.   No one, I suppose, will deny the sufficiency or solidity of the foundation.

In this case now before the court the property alleged to be taken is a riparian right.   The supreme court, discussing such property, say, in 10 Wall. 497:

" This riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired.   It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and, if necessary that it be taken for the public good, upon due compensation."

Clearly, it is a property right in the civil as well as in the common law; and if there is an implied exception against its protection in the laws of Louisiana, such an exception should be made as manifest to this court as the protection to all property is expressed in the articles of the Code and Constitution herein cited.

In Louisiana, as well as in all the states, the implied powers are sufficient to warrant the imposition of this service on lands adjacent to the navigable rivers, and the imposition of such service may be the offspring of a wise public policy; but does it follow that there is, in the state or federal system, *any power outside of and apart from the eminent-domain right* to lawfully, by direct or implied legislation, take any private property, or take the use of it, or so damage it as to deprive the owner of its use or profits, with or without compensation?

The United States supreme court, in 6 How. 532, says:

" That in every political sovereign community there inheres, necessarily, the right and the duty of guarding its own existence, and of protecting and promoting the interests and welfare of the community at large. * * * This power, denominated the *eminemt domain* of the state, is, as its name imports, paramount to all private rights vested under the government, * * * and must yield, in every instance, to its proper exercise. * * * In fact, the whole policy of the country relative to roads, mills, bridges, and canals rests upon *this single power*, under which lands have been always condemned; and without the exertion of this power not one of the improvements just mentioned could be constructed."

The same court, discussing the same principles, (91 U. S. 367:)

" No one doubts the existence in the state governments of the right of eminent domain—a right distinct from and paramount to the right of ultimate ownership. * * * The right is the offspring of political necessity, and is inseparable from sovereignty unless denied to it by its fundamental law."

It is observable that the right of eminent domain and the police powers, though well-recognized attributes of political sovereignty, are distinctive in the purpose and extent for which the legislature may exercise them, and neither is ever free from the restraints or limitations of the fundamental laws. Laws passed under a proper exercise of these respective powers have often been considered by the federal courts, and their distinctive purposes and application recognized. To some extent these courts differ as to the basis of the eminent-domain right,—some of the decisions citing the power as resting on political necessity; some on the tenure of lands and implied compact; but I think no federal authority can be cited as a precedent for taking or appropriating the use and control of private property under any other power, expressed or implied, than "this single principle" of eminent domain, upon which it is well known that the policy of the country in relation to public works rests in one state as well as in another. 6 How. 532.

These courts have uniformly held that the police power is a different "prerogative power," and extends only to *regulating the owner's use* and dominion of private property, not to taking from him or dispossessing him of its use and control.

In a case where the city of Richmond prohibited, by ordinance, a railway company to use its locomotives in the streets to move and remove trains, the supreme court (96 U. S. 521) said: "The appropriate regulation of the use (by the owner) is not taking within the meaning of the constitutional prohibition."

The company in that case continued to use its railway track on the streets, but to run the locomotives in the city's streets was considered a noxious use on the part of the owner of its own property rights, and they were prohibited.

Dillon, Mun. Corp. § 93, discussing the same question, says:

" These police powers rest upon the maxim *'salus populi est suprema lex.'* This power to restrain a private injurious use of property is very different from the right of eminent domain. It is not taking private property from

the owner, but a salutary restraint on the noxious use by the owner contrary to the maxim '*sic utere ut alienum non lædas.*'"

Both of these powers are equally clear in the common law; but neither of them can be said to warrant the legislature in imposing, directly or impliedly, without compensation, such an easement or servitude as defendant herein claims. The supreme court having held in the case of *Pumpelly* v. *Green Bay Co.* 13 Wall. 166, that the taking of property in the meaning of the prohibition clause in the Wisconsin constitution, similar in language to article 156, was sufficiently established to warrant indemnity where it was shown that any "artificial structure was placed on the land, so as to effectually destroy or impair its usefulness to its owner," or when it was shown that plaintiff's land was covered with water in consequence of the back water from a mill-dam, which was built according to state statute, went on to say:

"We do not think it necessary to consume time in proving that when the United States * * * parts with the fee, by patent, without reservation, it retains no right to take that land for public use without just compensation; nor does it confer such a right on the state within which it lies; and that absolute ownership * * * is not varied by the fact that it borders on a navigable stream."

This is the common-law doctrine as to easements, and this decision and others, notably the 51 N. H. 504, establishes the law as to what amounts to a taking of private property under the common-law rule, which is emphasized in article 156, State Const. 1879.

In the New Hampshire case, cited with approval in 13 Wall. 166, a railway company, acting under legislative authority, caused the removal of a natural barrier which had previously completely protected plaintiff's land from freshets in the river close by. In consequence of the railway's removal of the barrier, the water sometimes overflowed the meadows, carrying stones, sand, and gravel upon plaintiff's land. Under this showing, the court held it was such a taking by the railway as the legislature could not authorize without providing for compensation.

The decisions of the several states, so far as I have had an opportunity to examine them, are uniform in the opinion that to constitute a taking there must be some direct, actual, physical interference with, or disturbance of, the lands or chattels. Now, if no such service is known to the common law, can such a servitude as is exacted by defendant be imposed by statute under any implied power peculiar to Louisiana and her system of laws?

The defendant, in *Pumpelly's Case*, claimed that the Green Bay Company had an implied easement on Pumpelly's land in favor of improving the Fox river, and Pumpelly could not complain if his land was overflowed by the company's dam, it having been built according to law, and no compensation was due him. The court refused to maintain the view that any such easement was implied in

violation of the constitutional prohibition, and clearly intimates that Pumpelly's land would have been protected from such an injury or damage by the common law, in the absence of any such constitutional prohibition.

The supreme court of New Jersey, in *Sinnickson* v. *Johnson,* 2 Har. 129, says, of the right to take private property,—

"That this power to take private property reaches back of the constitutional provisions; and it seems to have been a settled principle of universal law that the right to compensation is an incident to the exercise of that power; that the one is inseparably connected with the other; that they may be said to exist, not as separate and distinct principles, but as parts of one and the same principle."

This was said in vindication of the protection afforded in the common law at a time when New Jersey had no prohibitive clause like article 156 of our constitution. Chancellor KENT, in *Gardner* v. *Newburgh,* 2 Johns. Ch. 162, maintained the same view as to the common-law protection of private property in New York, in the absence of such a clause in the state constitution. In addition to English authority, he cites continental jurists to show that they all lay it down as a clear principle of natural equity that the individual whose property is sacrificed for public purposes must be indemnified. Mr. Justice MILLER cites these last two cases in his opinion in the Pumpelly suit, to show what amounts to a taking; but they are further instructive on the question as to whether an easement, for the enjoyment of which private property must be taken or damaged, may be imposed by statutory implication, in the face of the common-law rule, whether written or unwritten, in the laws or constitution of the state.

In the New Jersey case defendant had been authorized by statute to build a dam across a stream to improve navigation, and thereby the water was pushed back on plaintiff's land. Defendant claimed, in consequence of being authorized by law to build the dam in a certain way, he had an implied easement on the lower land, which received the overflow. This was denied by the court, and he had to pay damages. Chancellor KENT granted an injunction preventing the diversion of water from plaintiff's land, over which was the natural flow, because the legislature authorizing the public work made no provision for compensation.

These cases show that no provision for compensation having been made, no such easement was implied in the statutes authorizing the public work; that the injury in each case was considered as taking private property for public use, and cannot, under such circumstances, be treated only as a consequential injury, not warranting indemnity.

In law, strictly speaking, land is not property, and, though it may be damaged, it cannot be taken; but the right to possess it, its uses and profits, to control and dispose of it, and its beneficial uses at will, is property. These rights are created, defined, and protected by rules of law. A common-law regulation of conduct of trade or business

may be changed or annulled by legislative will, as well in Louisiana as elsewhere; but these rights of property in land cannot be changed or annulled, under any power of government, so as to destroy or impair them, or their beneficial uses, in violation of constitutional limitation.

In Louisiana the law is called the civil law. Its Code says, "Law is the solemn expression of legislative will;" but does it follow that the implied powers to be exercised by "legislative will" are different in their nature or extent from those under which legislation may be rightfully exercised in Wisconsin? The property which is known as the riparian right is the land lying next to the river front, designated in articles 660 and 661, Civil Code, as "the space which is to be left for public use." This space is to be left "on the shores of navigable rivers;" but it has no definite limits or dimensions fixed in the Code, and this fact of itself suggests strong reasons why *the court should discuss and fix limits to the undefined space,* when an unwilling owner invokes the protection of the law against the riparian use or right being taken, or its beneficial use damaged, in pursuance of any claim to an implied easement.

The articles of the Code cited herein for plaintiff's protection announce well-known rules for the protection of property at common law, and since they are a part of the system of laws in Louisiana, before denying plaintiff a cause of action it should be made clear that such property rights as we are now discussing are impliedly or directly excepted from the protection warranted in these articles and rules of law. To me it seems clear that if I should conclude that she cannot recover, admitting her allegations to be true, it will follow, as of course, that the court indorses one of two views: *First*, that her land, though it has been appropriated to the public use, so that physically and in law she has been excluded from its dominion and beneficial uses, has not been "taken nor damaged," in the meaning of the common-law rule, emphasized in article 156, Const. 1879; *second*, that such a taking as she alleges can be and has been provided for by the legislature, in enacting the levee laws of the state under a proper exercise of the police power, or some power other than the eminent domain. I am unwilling to assent to either view. To the first, because a taking, or what amounts to such a taking in law, can—at least in the absence of any statute defining a taking—be judicially determined only by a resort to the general reasoning and legal analogies which we find in the jurisprudence to which these common-law rules properly belong. References to such jurisprudence show that an actual physical disturbance of or interference with land, so as to damage its beneficial uses, is a taking which is prohibited. As to the second, aside from the reasonable doubt whether a public use, or the necessity for the use, or what amounts to a public use, can be conclusively determined by legislative will, so that judicial inquiry would be precluded, I do not think "private property may be taken for public use,

under the general police power of the state, without compensation therefor," as was held in the *Bass Case*, or that it may be taken for public use under the exercise of any other power than "*this single principle*" of *eminent domain, which in all cases carries with it just indemnity*.

Article 156 of the constitution of 1879, appearing for the first time in A. D. 1845 in this state's constitution, has been emphasized in all the subsequent constitutions, until now we find its meaning and prohibitive effect enlarged by the additional inhibition against *damaging* private property without compensation. The article from the beginning has meant something, and these additional words "nor damage" are too significant to be considered only as an idle and purposeless contribution to the organic law regulating and protecting property. It is not clear at all to me that the property right, for the protection of which it is now invoked, is, by any statutory implication, excepted from the pale of this protection, whatever the power may be under which articles 660 and 661, Civil Code, and subsequent laws, may have been enacted.

Plaintiff shows a cause of action which should be heard and passed upon by this court, and the exception is overruled.

---

Riparian owners on a navigable stream cannot recover damages for a diversion of the water by the state, or by a corporation acting by authority of the state, for the improvement of the navigation.[1] The state legislature cannot authorize a taking or damaging of property without compensation.[2] Depriving one of the right of user of his land is as much a taking as if the land itself were "physically taken away."[3] The term "property," in its legal signification, means only "the rights of the owner in relation to it,"—"the right of a person to possess, use, enjoy, and dispose of a thing."[4] Riparian rights are property, and can be taken for the public good only when due compensation is made.[5] Any physical interference with those rights "takes" *pro tanto* the owner's "property." The right of indefinite user is an essential quality or attribute of absolute property, without which absolute property can have no legal existence, and this right necessarily includes the right and power of excluding others from using the property.[6] Occasional inundations may produce the same effect in preventing an owner from making a beneficial use of his land, as would be caused by a manual asportation of the constituent materials of the soil. So, covering the land with water or with stones is a serious interruption of plaintiff's right to use it in the ordinary manner.[7] And from the very nature of these rights of user and of exclusion, it is evident that they cannot be materially abridged without, *ipso facto*, taking the owner's property.[8] The destruction of property is as much a divestiture of vested rights as a change or destruction of its title. A previous adequate compensation can alone justify an expropriation for purposes of public utility.[9] The law concerning the expropriation of private property for public use, does not

[1] Black Riv. Improve. Co. v. La Crosse Booming, etc., Co. 54 Wis. 659.

[2] Eaton v. Boston, C. & M. R. Co. 51 N. H. 511, and cases cited.

[3] People v. Kerr, 37 Barb. 399.

[4] Eaton v. Boston, C. & M. R. Co. 51 N. H. 511; Wynehamer v. People, 13 N. Y. 378.

[5] Yates v. Milwaukee, 10 Wall. 497.

[6] Wynehamer v. People, 13 N. Y. 378.

[7] Eaton v. Boston, C. & M. R. Co. 51 N. H. 513; and see Reeves v. Wood Co. 8 Ohio St. 346.

[8] Walker v. O., C., etc., R. Co. 103 Mass. 14.

[9] Cash v. Whitworth, 13 La. Ann. 401.

apply to lands on the banks of navigable rivers necessary for levee purposes.[1]   Where a city built a dike in the channel of the river so that the current was diverted and mud deposited on plaintiff's land, *held,* that he was entitled to damages.[2]   So, where a lower riparian owner constructed a dam so that in times of ordinary freshet the water was thrown back upon plaintiff's land, he was entitled to damages.[3]   The remedy for the violation of riparian rights is by action at law.[4]—[ED.

[1] Dubose v. Levee Com'rs, 11 La. Ann. 165.
[2] Meyers v. St. Louis, 8 Mo. App. 266.

[3] Bristol Hydraulic Co. v. Boyer, 67 Ind. 236.
[4] Mason v. Cotton, 2 McCrary, 82.