ROBERT BARRETT, APPELLANT, V. F. J. RICKARD, APPELLEE.

FILED JANUARY 5, 1910.  No. 16,337.

1. **Intoxicating Liquors**: EXCISE BOARDS: POLICE POWER. The excise board of the city of Lincoln, in pursuance of the provisions of section 7963, Ann. St., 1909, established the following rule: "It shall be unlawful for any railroad company, express company, or other common carrier, or agent, officer or other representative of any such common carrier, to make delivery to any person of intoxicating liquors within said city at any other point than the principal and usual place of business of said common carrier therein; and every common carrier bringing malt, spirituous or vinous liquors into said city shall be required to establish one definite place of business therein at which all deliveries of such liquors shall be made to *bona fide* consignees thereof in person only." *Held*, the establishment of the rule, so far as involved in the facts discussed in the opinion, comes within a reasonable exercise of the police power of the officers of the city.

2. ———: ———: RULES: VALIDITY. A rule of an excise board of the city of Lincoln will not be held to be invalid merely because it imposes restrictions upon the delivery of intoxicating liquors in the city by a common carrier or its agents that it would not be permissible to impose upon the delivery of ordinary articles of commerce.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*E. J. Murfin, T. J. Doyle* and *G. L. De Lacy,* for appellant.

*J. M. Stewart, T. F. A. Willams, C. C. Flansburg* and *L. A. Flansburg, contra.*

52

DEAN, J.

This is a habeas corpus proceeding brought here for review from the district court for Lancaster county. The record, in substance, discloses that on August 3, 1909, Robert Barrett, defendant, was in the employ of a firm engaged in a general drayage business at Havelock, such as the hauling for hire of goods, wares and merchandise. On that date, as such employee, he delivered a case of beer within the corporate limits of Lincoln at the residence of a purchaser who bought it from a regularly licensed dealer in malt, spirituous and vinous liquors at Havelock, a city of less than 5,000 population, and located about five miles distant from Lincoln. When the beer was delivered by the defendant, he was arrested by F. J. Rickard, chief of police of the latter city, on the ground that such delivery was in violation of rule 12 of the excise board of the city. The defendant brought this action in the district court, alleging the invalidity of rule 12, and consequent unlawful arrest. Upon the hearing the trial court denied the relief prayed for by defendant and remanded him to the custody of the law officers. From that judgment he has brought the case here for review. Rule 12 of the excise board is as follows: "It shall be unlawful for any railroad company, express company, or other common carrier, or agent, officer or other representative of any such common carrier, to make delivery to any person of intoxicating liquors within said city at any other point than the principal and usual place of business of said common carrier therein; and every common carrier bringing malt, spirituous or vinous liquors into said city shall be required to establish one definite place of business therein at which all deliveries of such liquors shall be made to *bona fide* consignees thereof in person only." The above rule was established in pursuance of the following provisions contained in section 7963, Ann. St. 1909: "The excise board shall have the exclusive control of the licensing and regulating

of the sale of malt, spirituous, vinous, or intoxicating liquors in such city, and for that purpose shall hold a public session at least once each month at the council chamber in said city, and a record of its proceedings shall be made and kept as a public record by the city clerk, who shall be clerk of said board. A majority of such board shall constitute a quorum. The excise board may license, regulate, or prohibit the selling or giving of malt, spirituous or vinous, mixed or fermented intoxicating liquors in said city,  *  *  *  and any person selling or giving away in said city any liquor of the description mentioned in this section, without first having complied with such regulations, and procured a license or permit therefor, or who shall violate any of the rules and regulations established by such excise board and governing the sale of such liquor shall on conviction thereof be fined in any sum fixed by such rule not more than two hundred dollars for each offense, and shall be committed to the city jail until such fines and costs are paid.  *  *  *  The excise board shall also make all needful rules and regulations not inconsistent with the laws of this state for the control of places at which malt, spirituous, vinous, or intoxicating liquors may be sold in said city; and all such rules and regulations, when adopted by said board and published once in a daily newspaper published and of general circulation in said city, shall have like force and effect as ordinances of said city adopted by the city council thereof, and shall be proved in like manner. The excise board when in session shall have the same power to issue subpœnas and compel the attendance of witnesses and compel them to testify concerning matter pending before them, as a justice of the peace has on an examination before him; and the president of the board or presiding member for the time being shall have the same power as such justice to administer oaths and affirmations. All subpœnas, commitments, and other processes shall be signed by the president or presiding officer for the time being of the board and countersigned by the city clerk.

The excise board shall have power and it shall be their duty to appoint a chief of police and such number of policemen and other officers as may be necessary to police the city, and protect persons and property and maintain peace and good order. * * * The mayor of the city shall be member *ex officio* of the excise board and chairman thereof."

The parties to this action entered into a stipulation containing, among others, the following: "The sole contention of the state is, and the sole question submitted in this case, that, under the provision of rule 12 of the excise board of the city of Lincoln, the defendants as common carriers were prohibited from delivering said beer, or any beer, to the residence of any citizen of Lincoln." Defendant contends that he should not be held to answer under the rule of the excise board here in question because, as he alleges, it deals solely with the subject of transportation, and not with the sale of intoxicating liquors, and he argues that the board exceeded its authority in the adoption of the rule, and that in so doing it usurped the province of the mayor and council of the city. In support of his contention he invokes the provisions of sections 7908, 8028, 8036, ch. 37, Ann. St. 1909, commonly known as the Lincoln charter, and also cites numerous authorities. Reference is likewise made in his brief to sections 7189, 7190, 7191, Ann. St. 1909, the latter sections of the statute having to do with the subject matter of transportation of intoxicating liquors. We do not believe defendant's contention can be sustained; and, with such brevity as a proper discussion of the facts and the law seem to permit, we submit the reasons for our decision.

The right of the legislature to clothe the city with power to adopt the rule in question is derived from that undefined branch of government known as the police power, which by some writers is said to bear the same relation to the municipality that the principle of self-defense bears to the individual. An analysis of the stat-

ute conferring on the excise board authority to establish
rules for the purposes therein mentioned, when considered
in connection with the facts in the present case, con-
vinces us that, in the establishment of rule 12, the board
was properly within the limits contemplated by the stat-
ute which created it and gave to it its powers.   The court
takes judicial notice of the fact that the city of Lincoln
has a population of about 60,000 people, and that on the
date when defendant was arrested the city did not have
an open saloon for the sale of malt, spirituous and vinous
liquors within its borders, the majority of its voting
population having at the last preceding election declared
that no license should be issued for the ensuing fiscal
year for the purpose of selling such liquors within the
corporate limits of the city.   The court also takes judicial
notice of the fact. that Havelock is situated about five
miles from Lincoln, and it is admitted in the record that
one or more saloons in Havelock are engaged in the oc-
cupation of selling malt, spirituous and vinous liquors
in pursuance of licenses regularly obtained.   It is matter
of common knowledge that substantial cities, of about
the population of Havelock, and villages grow up and be-
come permanently established contiguous to the larger
centers of population.   At times it may happen, as in the
present case, that the smaller city licenses the traffic in
intoxicating liquors, while the more populous city may
have denied the right of such traffic.   Under such cir-
cumstances, and in order that the will of the people of
the city forbidding the traffic may be effective, some pro-
visions such as those contained in rule 12 must neces-
sarily be adopted and enforced by the excise board; other-
wise the will of the citizens with respect to their affirm-
ative action against the granting of liquor licenses might
be practically set at naught by the establishment of a
line of special delivery conveyances, or by other like
means, whereby the proscribed commodity might be de-
livered everywhere throughout the city without let or
hindrance as to time or place, and without any control or

the possibility of supervision by the officers of the municipality, and to such extent that the attempted control of the traffic either by the rule of the excise board or by city ordinance would be fruitless. The control of the traffic in intoxicating liquor intended for use as a beverage, and as an incident thereof the control of its transportation, comes properly within a reasonable exercise of the police power by the municipal officers. Without power vested in the city authorities to control, within reasonable limits, the local or other importation for hire of intoxicating liquors into a city, for general distribution where the traffic in intoxicants is forbidden, would be to some extent a denial of the right of the municipality to control such traffic. It would be an improper denial of self-government. The baneful effects that are attendant upon the intemperate use of intoxicating liquors have long been recognized, and in civilized communities everywhere they are deeply deplored. For this cause municipal and other governmental authorities in dealing with the traffic in intoxicants, from the moment when the finished product is pronounced by its makers as being ready for market until it is finally consumed, have been compelled for the protection of the community to impose restrictions upon every stage of its sale and its transportation, which, if applied to almost any commodity in common use, might well be held to be an unreasonable restraint of trade. In a civilized state it is idle to contend for the same liberty of trade and of transportation with respect to intoxicating liquors which are intended to be used as a beverage that is everywhere freely conceded to be a right that accompanies trading in and transporting by the usual methods, ordinary articles of commerce. The power to prevent an indiscriminate and general delivery of intoxicating liquors in a community, except in pursuance of such reasonable rules and regulations as such community may adopt, is a power that is incident and supplemental to that police power which is everywhere invoked by municipalities in the control of

the liquor traffic, and such regulation of transportation is substantially related to that subject. An exercise of the provisions of rule 12, so far as involved herein, is not the usurpation of authority, but is merely the exercise of that police power that extends to a reasonable regulation of the owner's use of his private property as distinguished from an appropriation of such property by the sovereign power.

*Munn v. Illinois,* 94 U. S. 113: "Under the powers inherent in every sovereignty, a government may regulate the conduct of its citizens toward each other, and, when necessary for the public good, the manner in which each shall use his own property."

*Chicago v. Netcher,* 183 Ill. 104, 75 Am. St. Rep. 98: "The liquor business is one peculiarly subject to the police power on account of the multitude of evils which result from it. Police regulation of that business has always been sustained, as having for its object the prevention of intemperance, pauperism and crime, and diminishing, as far as practicable, the injurious consequences to the public resulting from the business. In *Schwuchow v. City of Chicago,* 68 Ill. 444, it was said: 'This business is, on principle, within the police power of the state, and restrictions which may rightfully be imposed upon it might be obnoxious as an illegal restraint of trade when applied to other pursuits.' "

In *Pleuler v. State,* 11 Neb. 547, in discussing the legality of an act prohibiting "the sale of liquors within a strip of two miles around an incorporated city or village, while it may be licensed both within and without that limit," LAKE, J., speaking for the court, says: "This provision violates no command of the constitution. It is general in its application to all territory of the state falling within such description, and it is but an exercise of the police power intrusted to the legislature. It is referable to that principle which enables the legislature to prohibit liquor selling on Sundays and on days of elections, or within the vicinity of fairs, camp-meetings, and

other gatherings of the people. It is the power exerted by the legislature of Kentucky, and recognized in *Board of Trustees of Falmouth v. Watson,* 5 Bush (Ky.) 660, in the provision that persons engaged in the retail of spirituous liquors within one mile of an incorporated town must have a license to do so from the proper officers thereof, although already licensed by the county authorities under another general law of the state." *Thurlow v. Massachusetts,* 5 How. (U. S.) *504; *Fletcher v. Rhode Island,* 5 How. (U S..) *504; *Pierce v. New Hampshire,* 5 How. (U. S.) *504; *City of Grand Rapids v. Braudy,* 105 Mich. 670, 32 L. R. A. 116; *Jugenheimer v. State Journal Co.,* 81 Neb. 830; *State v. Dudgeon,* 83 Neb. 371; *People v. Draper,* 15 N. Y. 532; *Ex parte Brown,* 38 Tex. Cr. Rep. 295, 70 Am. St. Rep. 743; *Hollingsworth v. Parish of Tensas,* 17 Fed. 109.

22 Am. & Eng. Ency. Law (2d ed.) 919: "The police power is inherent in the several states, and is left with them under the federal system of government, and may always be exercised by the state legislatures. * * * The police power of the states may, in the absence of any constitutional restrictions upon the subject, be delegated to the various municipalities throughout the state, to be exercised by them within the corporate limits. And indeed such delegation is necessary, for it is a well-recognized principle in government that the police requirements of a city are different from those of the state at large, and that stricter regulations are essential to the good order and peace of a crowded metropolis than are required in the sparsely peopled portions of the country."

28 Cyc. 692: "The police power of the state, being an expression of the instinct of self-preservation and protection characteristic of every living creature, is an inherent faculty and function of life, attributed to all self-governing bodies as indispensable to their healthy existence and to the public welfare. It embraces all rules and regulations for the protection of the lives, limbs, health, comfort, and quiet of persons, and the preserva-

tion and security of property. * * * After repeated challenge of municipal authority to exercise the police power, on the ground that it is a sovereign power and therefore nondelegable, the doctrine is firmly established and now well recognized that the legislature may expressly or by implication delegate to municipal corporations the lawful exercise of police power within their boundaries; the measure of power thus conferred is subject to the legislative discretion."

*Stone v. Mississippi,* 101 U. S. 814: "Many attempts have been made in this court and elsewhere to define the police power, but never with entire success. It is always easier to determine whether a particular case comes within the general scope of the power, than to give an abstract definition of the power itself which will be in all respects accurate. No one denies, however, that it extends to all matters affecting the public health or the public morals."

It will be observed the excise rule, in the present case, provides that all deliveries of intoxicants shall be made to consignees in person only. In his brief defendant urges this as an additional reason why we should hold the rule invalid. But we do not decide the point in this opinion, thus raised by him, because it is not involved in the present case, the defendant's arrest having been made because of an unlawful delivery of intoxicating liquor, and not because of a delivery to some person other than the consignee. It will also be noted this feature of the excise rule is not assigned in the stipulation of counsel as one of the questions submitted for our decision. In view of the authorities, and for the reasons given herein, we hold that the establishment of rule 12 of the excise board of the city of Lincoln is not a usurpation of authority, but, so far as the rule is involved in the facts before us, is merely a reasonable exercise of the police power conferred by the legislature.

Finding no reversible error in the record, it follows the judgment of the district court must be, and it hereby is

AFFIRMED.