JOHN Q. MEYERS, Respondent, *v.* CITY OF ST. LOUIS, Appellant.

### January 27, 1880.

1. A riparian owner on a navigable stream owns to the water's edge, has the right of access to the river over his land, to make a landing subject to the rights of navigation, and to the use of the water in its natural flow, which rights cannot be wrested from him for the public use without just compensation.

2. A municipal corporation which projects a dike into a navigable stream, by which the water is diverted from the front of the riparian owner's land, is liable to him for the damage occasioned thereby.

3. If the river was diverted by the city of St. Louis to make a new wharf-line, it is made liable by the express provision of the charter of 1874.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

LEVERETT BELL, for the appellant: A municipal corporation, in the absence of negligence, is not answerable in a civil action for consequential damages arising from the execution of a public work which it is authorized by the State to engage in. — *St. Louis* v. *Gurno*, 12 Mo. 414; *Schattner* v. *Kansas City*, 53 Mo. 165; *Imler* v. *Springfield*, 55 Mo. 125. The city is not liable for damage caused by the erection of the dike in question. — *Barney* v. *Keokuk*, 94 U. S. 324; *Pound* v. *Turck*, 95 U. S. 459; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Stephens* v. *Railroad Co.*, 34 N. J. L. 280; *Thayer* v. *Railroad Co.*, 125 Mass. 253; *Zimmerman* v. *Canal Co.*, 1 Watts & S. 346; *Radcliff* v. *Mayor*, 4 Comst. 195; *Northern Co.* v. *Chicago*, U. S. Sup. Ct., delivered March 3, 1879.

MYERS & ARNSTEIN, for the respondent: The plaintiff, as a riparian owner on the Mississippi River, had the right of exclusive access to and from his lot, to and from the navigable waters of the river, and the right to have the river flow by his land as it flowed by nature. That right was property, within the protection of the constitutional pro-

vision which prohibits the taking of private property for public use without compensation. — *Lyon* v. *Fishmongers' Co.*, L. R. 1 H. L. Cas. 662; *Delaplaine* v. *Railroad Co.*, 42 Wis. 214; *Yates* v. *Milwaukee*, 10 Wall. 504; *Avery* v. *Fox*, 1 Abb. (U. S.) 246; Cooley's Const. Lim. 557; *Bowman* v. *Wathen*, 2 McLean, 376; *Chapman* v. *Railroad Co.*, 33 Wis. 629; *Ryan* v. *Brown*, 18 Mich. 196; *Duke of Buccleuch* v. *Metropolitan Board*, L. R. 5 H. L. Cas. 418; *Metropolitan Board* v. *McCarthy*, L. R. 7 H. L. Cas. 243; *Commissioners* v. *Kempshall*, 26 Wend. 404; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; *Clark* v. *Peckham*, 10 R. I. 35; *Tyler* v. *Wilkinson*, 4 Mason, 397; *Railroad Co.* v. *Schurmeier*, 7 Wall. 289; *Harrison* v. *Sterrett*, 4 Har. & M. 540; *Tinicum Fishing Co.* v. *Carter*, 61 Pa. 21; *Ten Eyck* v. *Canal Co.*, 18 N. J. L. 200; *Railroad Co.* v. *Chase*, 43 Md. 23; *Providence Co.* v. *Providence, etc., Co.*, 9 Cent. L. J. 409; *Thompson* v. *River Co.* (Sup. Ct. N. H.), 19 Alb. L. J. 117; *Dutton* v. *Strong*, 1 Black, 23; *Musser* v. *Hershey*, 42 Iowa, 356; *Arimond* v. *Canal Co.*, 31 Wis. 316; *Stetson* v. *Faxon*, 19 Pick. 147; *Rhodes* v. *Cleveland*, 10 Ohio, 159; *McCombs* v. *Akron*, 15 Ohio, 474; 18 Ohio, 229. The plaintiff owned at least to the water's edge, if not to low-water mark. The original grant from the State called for the river as the eastern boundary, and plaintiff's title followed the river when thrown east by the dike. He was entitled to the accretions. The State could set up no intervening title, nor do anything to derogate from or impair its grant. — *Clement* v. *Burns*, 43 N. H. 609–617; *O'Fallon* v. *Daggett*, 4 Mo. 343; *Smith* v. *Public Schools*, 30 Mo. 290; *Schools* v. *Risley*, 10 Wall. 110; Houck on Rivers, sect. 168 *et seq.*; *Kraut* v. *Crawford*, 18 Iowa, 549; *Lockwood* v. *Railroad Co.*, 37 Conn. 387; *Jones* v. *Soulard*, 24 How. 51; *LeBeau* v. *Gavin*, 37 Mo. 556; *Public Schools* v. *Risley's Heirs*, 40 Mo. 356; *Benson* v. *Morrow*, 61 Mo. 345. The mud deposit created by the city

between the bluff bank and the water's edge, as located after the building of the dike, was therefore on plaintiff's land, and was itself a "taking" of plaintiff's property. Anything which permanently destroys or impairs the use is, *pro tanto*, a "taking."— *Eaton* v. *Boston*, 51 N. H. 511; *Baron* v. *Mayor*, 2 Am. Jur. 203; *Lackland* v. *Railroad Co.*, 31 Mo. 181; *The People* v. *Canal Appraisers*, 13 Wend. 392; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Bell* v. *Hull*, 6 Mee. & W. 699, and authorities cited under first point. It was a condemnation for a "wharf," and would justify nothing but a "wharf." Property taken by right of eminent domain can be used only for the purpose for which it is taken. The public acquires nothing but an easement— the right to use for a particular purpose.— *Norton* v. *Railroad Co.*, 39 L. T. (N. s.) 25; *s. c.* 18 Alb. L. J. 267; *Adams* v. *Rivers*, 11 Barb. 390; *Lance's Appeal*, 55 Pa. St. 16; Cooley's Const. Lim. 545, 548, 551, and cases there cited.

Glover & Shepley, for the respondent: A riparian owner upon a public river has a property right in the stream, being the benefit to him of the use of the water and shore as a landing, or shipping-place, or wharf of his own, should he see fit to construct one; and no person can with impunity destroy, encroach upon, or impair (against his will) this riparian property. — 1 Dill. on Mun. Corp., sects. 70–72; *Yates* v. *Milwaukee*, 10 Wall. 497; *Railroad Co.* v. *Schurmeier*, 6 Wall. 272; *Dutton* v. *Strong*, 1 Black, 25; *Natoma, etc.*, v. *McCoy et al.*, 23 Cal. 490; *Newhall* v. *Iveson et al.*, 8 Cush. 595; *Cowley* v. *Kidder*, 24 N. H. 364; *Clement* v. *Burns*, 43 N. H. 609; *Wadsworth* v. *Tillotson*, 15 Conn. 366, 373; *Thurman* v. *Morrison*, 14 B. Mon. 367. By the common law, the right of the riparian owner in the soil extends to the middle line of the stream of a non-public river. The United States Supreme Court decided that it extended to the middle line of the Mississippi River. — *Jones* v. *Soulard*, 24 How.

65; *Benson* v. *Morrow*, 61 Mo. 345. In every case of encroachment upon the soil of the riparian owner, or diversion of the flow of his water, if the person who thus interferes will not employ the means of appropriating the property by condemnation, and compensation to the owner, the riparian owner may have his action for damages. — *Stein* v. *Burden*, 24 Ala. 130; *Cogswell* v. *Essex, etc.*, 6 Pick. 94; *Piersall* v. *Post*, 22 Wend. 425; *Gates* v. *Blinco*, 2 Dana, 158. · Whatever partially destroys or diminishes the right of the riparian owner is a taking of it, in the meaning of the Constitution, and for every such injury the owner is entitled to compensation. — *Glover* v. *Powell*, 10 N. J. Eq. 211, 229; *Hooker* v. *New Haven, etc.*, 15 Conn. 312; *Denslow* v. *New Haven, etc.*, 16 Conn. 98; *The People* v. *Canal, etc.*, 13 Wend. 355; *Walker* v *Board, etc.*, 16 Ohio, 340; Ang. on Watercourses (6th ed.) sect. 541. When power is given by statute to take private property for public use, the power must be strictly pursued. — *Newark* v. *Elmer*, 9 N. J. Eq. 754; *Renwick* v. *Morris*, 3 Hill, 621; *Hogg* v. *Zanesville*, Wright, 130; *Ellis* v. *Railroad Co.*, 51 Mo. 200; *Cunningham* v. *Railroad Co.*, 61 Mo. 33. The building of the dike in question was not an exercise of any power conferred by the charter. — *Knox* v. *Challoner*, 42 Me. 150; *Spooner* v. *McConnell*, 1 McLean, 352; *Works* v. *Junction R. Co.*, 5 McLean, 426; *Columbus, etc.*, v. *Curtenius et al.*, 6 McLean, 209; *Williams* v. *Beardsley*, 2 Cart. 591; *Packet Co.* v. *Bridge Assn.*, 38 Ill. 467.

BAKEWELL, J., delivered the opinion of the court.

The petition alleges that defendant, as a municipal corporation created under the laws of Missouri, had charge of the duty of improving the streets and wharves of the city of St. Louis; that plaintiff, for the purpose of carrying on his steam saw-mill business, had acquired, and, at the time of the grievances complained of, owned a leasehold.

The lot is described as fronting one hundred and sixty-two feet on the Mississippi River, bounded west by Second Street and south by Bryan Street. The lease was for a term of ten years from January 1, 1870, with the right to remove the improvements. Plaintiff had erected a steam saw-mill and other valuable improvements on the lot, connected with the mill business. He alleges that the term, at the time of the injury complained of, was worth $30,000, and that the lease was obtained and the buildings erected because the depth of water and nature of the ground enabled plaintiff to land large rafts of timber in front of his lot; that the natural channel of the Mississippi was in front of plaintiff's lot, and that this was essential to keep up a sufficient depth in front of his lot to enable rafts of timber to land there, so that they might be, at slight cost, conveyed to the mill; that the foot of Bryan Street is but a few hundred feet from the saw-mill, and that that street runs east to the river, on the south side of plaintiff's lot; that in July and August, 1874, defendant unlawfully caused a dike twenty feet broad by seven hundred feet long to be built across the channel of the river from the bed to the surface, extending from the foot of Bryan Street, which diverted the river from its natural channel and threw it many hundred yards to the east, causing the formation of a deposit of mud along the entire front of plaintiff's premises six feet deep and a hundred feet wide, and making the water so shallow that during the continuance of the lease it will be impossible to land timber in front of the premises; that there is no other way of getting timber to the saw-mill, and that the obstruction and diversion of the river has entirely destroyed the value of the lease; that at the time this dike was built, plaintiff had heavy timber, worth $10,000, in rafts landed in front of his premises, and belonging to him, and apparatus by which the same would have been hauled; and that, in consequence of the dike, this timber sank in

the mud and could not be extricated, and was wholly lost. Plaintiff asks damages in the sum of $40,000.

Defendant states in its answer that it is a municipal corporation, created in 1822, and that its western boundary has always been the Mississippi River; that the dike is a continuation of Bryan Street towards the eastern boundary of the city, and entirely within the city limits; that by an act approved March 3, 1851, concerning swamp lands in St. Louis County, the State granted to defendant all lands owned by the State, not reserved for public purposes, within the city limits; and that the United States, by act of June 12, 1866, granted to defendant, in fee-simple, all the right and title of the United States to all wharves and public thoroughfares within the city; and that, by the city charter of 1870, defendant was authorized to construct all needful improvements in the harbor, comprising the bed, channels, bayous, bars, and islands of the river from the Missouri to the Meramec, to deflect the currents of the river, and regulate and repair public wharves and docks; that at the time of the alleged injuries the public wharf was, and had long been, established and opened in front of these premises, and included the landing in question north and south, and east as far as the Bryan Street dike extends; that Bryan Street, before the date named by plaintiff, was a duly established public street, extending over seven hundred feet into the river and to the east line of the wharf; that before the alleged grievances Bryan Street was constructed only to the water's edge, and that defendant, being so authorized to do, for the purpose of completing Bryan Street and of deflecting the dangerous current, constructed the street so far as it had been lawfully established; and that this is the dike complained of.

The replication denies all allegations of new matter. There was a verdict and judgment for plaintiff for $35,000.

On the trial, plaintiff introduced evidence tending to prove the allegations of his petition. That he had, before

the dike was built, an exceptionally valuable mill-site, and that it was totally destroyed by the erection of the dike, are facts that are not seriously disputed. If plaintiff was entitled to recover at all, it is not pretended that the verdict was excessive. The only point upon which appellant insists before us is the right of plaintiff to maintain the action.

As a riparian proprietor, plaintiff owned the land to the water's edge. Under the acts of the Congress and the system of surveys adopted by the United States, the Mississippi River is a navigable stream. *Benson* v. *Morrow*, 61 Mo. 351. The question of the ownership of the soil under it and other great navigable streams of the United States is one that has been differently settled in different States. Some States hold that the riparian proprietor owns *usque ad filum aquæ;* other States hold that he owns only to the water's edge. The question of the ownership of the soil under the water is one which each State is at liberty to determine for itself; and if it chooses to concede the right of the riparian owner to the centre of the stream, it is not for others to raise objection, as is said by the Supreme Court of the United States in *Barney* v. *Keokuk*, 94 U. S. 324. In Missouri, the riparian proprietor owns only to the water's edge. *Benson* v. *Morrow*, *supra*. This can make little difference in the present case — or, we conceive, in any case. The right to use the stream as a public highway is not involved. That right exists in the public, wherever the title terminates.

"Whether the title of the owner of such a lot extends beyond the dry land or not, he is certainly entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream; and, among those rights, one is access to the navigable part of the river from the front of his lot — the right to make a landing, wharf, or pier, subject to such general rules and regulations as the Legislature may see fit to impose for the protection of the rights of the pub-

lic, whatever these may be." This is the language of Judge Miller in *Yates* v. *Milwaukee*, 10 Wall. 504. "The rights of a riparian proprietor," says Lord Selbourne, in *Lyon* v. *Fishmongers' Company*, L. R. 1 App. Cas. 662, " so far as they relate to any natural stream, exist *jure naturæ*, because his land has by nature the advantage of being washed by the stream ; and if the facts of nature constitute the foundation of the right, I am unable to see why the law should not recognize and follow the course of nature in every part of the same stream. * * * With respect to the ownership of the bed of the river, this cannot be the natural foundation of riparian rights, properly so called ; because the word ' riparian ' is relative to the bank, and not to the bed of the stream, and the connection, when it exists, of property on the bank with property in the bed of the stream, depends, not upon nature, but upon grant or presumption of law. * * * It is necessary for the existence of a riparian right, that the land should be in contact with the flow of the stream. * * * Even if it could be shown that the riparian rights of the proprietor of the land on the bank of a tidal navigable river are not similar to those of a proprietor above the flow of the tide, I should be of opinion that he had a right to the river frontage belonging by nature to his land, although the only practical advantage of it might consist in the access thereby afforded him to the water, for the purpose of using, when upon the water, the right of navigation common to him with the rest of the public. Such a right of access is his only, and is his by virtue and in respect of his riparian property ; it is wholly distinct from the public right of navigation."

Undoubtedly, at common law, both in England and America, and under the common law and civil law doctrines as modified after the system of surveys established after the acquisition of the North-West Territory, every person owning on the banks of the Mississippi has a right that it should flow *ubi currere solebat*. *Bealey* v. *Shaw*, 6 East,

208; *Delaplaine* v. *Railroad Co.*, 42 Wis. 214; *Yates* v. *Milwaukee*, 10 Wall. 497; *Tyler* v. *Wilkinson*, 4 Mason, 397; *Tinicum Fishing Co.* v. *Carter*, 61 Pa. St. 21; 1 Dill. on Mun. Corp., sects. 70–72; *O'Fallon* v. *Daggett*, 4 Mo. 345. The right to have the river flow by his land as it flowed by nature, and the right of access to the river at this point, were rights of plaintiff as riparian owner, additional to his right as one of the general public to use the river as a highway. His rights to access were exclusive, subject to the general easement in the public to use the river for purposes of navigation, and to make a temporary landing there when the exigencies of the case might require it.

And this right was the property of the plaintiff. "It is a right," says the Supreme Court of the United States, in *Yates* v. *Milwaukee* (*supra*), "of which, when once vested, the owner can only be deprived in accordance with established law; and, if necessary that it be taken for the public good, upon just compensation." "Such riparian rights," says Judge McLean in *Bowman* v. *Wathen*, 2 McLean, 376, "frequently constitute the chief value of river property, and to deprive an owner of them without compensation is to despoil him of a most valuable property."

That the destruction of the riparian right of plaintiff was such a taking of private property as to come within the limitation on the exercise of the right of eminent domain contained in the State Constitution is clear, we think, both on reason and authority. On this point we may refer to most of the cases cited above, and also to *Pumpelly* v. *Green Bay Company*, 13 Wall. 166; *Eaton* v. *Boston, etc., Railroad Company*, 51 N. H. 504 (where the leading cases on the question as to what constitutes a taking of property, within the meaning of the constitutional limitation, are most exhaustively considered and carefully classified), and *Commissioners* v. *Kempshall*, 26 Wend. 404.

It is urged that it is the settled doctrine in this State that a municipal corporation, in the absence of negligence,

is not answerable in a civil action for consequential damages arising from the execution of a public work which it is authorized by the State to engage in. The principle is a correct one, and, as is remarked in *Pumpelly* v. *Green Bay Company*, the decisions have gone to the uttermost limit of sound judicial construction in favor of it, and in some cases beyond it. In many of the highway-grade cases, however, the cities, whilst injuring private property, have not exceeded the strict legal rights of coterminous proprietors; and in others of them the user of public property was not unreasonable, for the reason stated by Judge Napton in *Taylor* v. *St. Louis*, 14 Mo. 20: that the probability of a change of grade was a circumstance which might have been considered and calculated upon when the lot was purchased or the building erected. The fact that a man owns a lot of ground does not give him rights which deprive his neighbor, or the general public, of their rights. The general public has a right to use and improve the highway, and a reasonable use of proprietary rights may lead to consequences which make the occupation of the neighboring lot less convenient; but there is not necessarily in this a taking of property within the meaning of the constitutional limitation, and these chances are foreseen and calculated upon. But the building of a dike into the Mississippi, by which its stream is diverted from a lot which derives its value from its water-front, cannot be assimilated to these cases of remote and consequential damage; and if, as we have seen, riparian rights are property, it cannot be said that this is not a taking of property.

The owner of land through which a stream of water flows has no property in the water, though he has a legal right to the use of the water; and this is property of which he cannot be deprived without just compensation, without his consent. At a time when the Constitution of New York contained no provision against taking private property for public purposes without compensation, Chancellor Kent

enjoined the trustees of a town from diverting a water-course for public work, under an act of the Legislature, because the act made no provision for compensation. *Gardner* v. *Newburgh*, 2 Johns. Ch. 162. The rights of a riparian property owner on a navigable stream are not precisely the same as those of one who owns both banks of a smaller river; but they are not less real, not less property; and though in neither case is the property in the water itself, — which *labitur et labetur in œvum*, — in both cases there is a valuable right not to have the water diverted from its accustomed course, and in both cases the diversion of the stream is a taking of property. The Legislature cannot authorize the direct taking of property without compensation, for any public work, however necessary; and the British Parliament, which is restrained by no written constitutional limitation, as with us, never strips the subject of his property without full compensation, no matter what may be the exigency, and exerts its power of compelling an alienation by the owner at a reasonable price only in cases of public necessity and with great caution. 1 Bla. Comm. 139.

When it is settled that riparian rights are property, — and of this there seems to be no doubt, — the question as to the right to take them without compensation is at an end.

We are referred to the *Northern Transportation Company* v. *Chicago*, a case recently decided by the Supreme Court of the United States, and not yet reported. But that case does not seem to overrule *Yates* v. *Milwaukee* and the other cases cited above. The case was one of obstruction to a street by the city, by building a coffer-dam. The court decides that this was not a public nuisance, because authorized by law. The inconvenience was temporary. If the owner had been permanently deprived of the use of the street, the case would have been different. In that case, under the ruling of our Supreme Court in *Lackland* v. *North.*

*Missouri Railroad*, 31 Mo. 181, the owner could not have been deprived of his right to use the street, without compensation. The right of the owner of a lot in a town to the use of the adjoining street is declared by our Supreme Court, in the case just cited, to be as much property as the lot itself, and that it is immaterial whether he owns to the middle of the street or not. So, the right of a riparian proprietor to the flow of the water in front of his lot is as much property as the lot itself, and it is immaterial that he does not own to the middle of the stream. It is impossible to see why the property can be taken in one case and not in the other.

There is nothing in the defence that the river was diverted to make a new wharf-line. The charter of the city in force at the time (art. 8, sect. 1) provides that " whenever the city shall provide, by ordinance, for establishing   *   *   * or altering any   *   *   *   wharf,   *   *   *   and it becomes necessary for that purpose to take private property, just compensation shall· be paid to the owner."

We think that the judgment of the Circuit Court should be affirmed. It is so ordered. Judge HAYDEN concurs; Judge LEWIS is absent.