MYERS v. THE CITY OF ST. LOUIS, *Appellant.*

**Deed, Ambiguity** in: NATURAL MONUMENTS, CALLS AND DISTANCES
Natural monuments and objects called for in a deed shall control
in case of ambiguity, although they conflict with the courses
and distances called for by the deed. And when the latter, in its
description of the land conveyed, calls for a river as a boundary,
this call will prevail. But if doubt as to the intention of the par-
ties should still remain, resort may then be had to evidence of the
surroundings of the parties at the time of the execution of the in-
strument.

ON REHEARING.

**Constitution**: TAKING PRIVATE PROPERTY FOR PUBLIC USE: RIPARIAN
RIGHTS, DAMAGE TO: COMPENSATION. Damage to the rights of a ripa-
rian owner of land on the Mississippi River in the city of St. Louis,
caused by the projection of a dike by the city into the river, was
within the protection of article 1, section 16 of the constitution of
1865, which provided "that no private property ought to be taken
or applied to public use without just compensation."

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Leverett Bell* for appellant.

The damages complained of by plaintiff are not within
the protection of section 16, article 1 of the constitution of
1865, which provided "that no private property ought to
be taken or applied to public use without just compensa-
tion." It is not sufficient to sustain the judgment below
to show that the property of the plaintiff was *damaged* for
public use. *St. Louis v. Gurno,* 12 Mo. 414; *Taylor v. St.
Louis,* 14 Mo. 20; *Hoffman v. St. Louis,* 15 Mo. 651; *Schatt-
ner v. Kansas City,* 53 Mo. 165; *Wegman v. Jefferson City,*
61 Mo. 55; *Foster v. St. Louis,* 71 Mo. 157; *Swineford v.
Franklin Co.,* 73 Mo. 279; *Broadwell v. Kansas City,* 75 Mo.
213; *Transportation Co. v. Chicago,* 9 Otto 635; *Radcliff v.
Mayor,* 4 Com. (N. Y.) 195; *Mayor v. Willison,* 50 Md. 138;
*Gould v. Railroad Co.,* 6 N. Y. 522; *Tomlin v. Railroad Co.,*

32 Ia. 106; *Burney v. Keokuk*, 94 U. S. 324; Weeks on *Damnum Absque Injuria*, § 8. By the constitution of 1875, which went into effect November 30th, 1875, and subsequent to the injuries complained of by plaintiff, property *damaged* as well as property taken, is brought within the protection of the law. Const. 1875, art. 2, § 21. The change made by the present constitution has a direct bearing on the question here presented. *Atlanta v. Green*, 67 Ga. 386; *Elgin v. Eaton*, 83 Ill. 536; *Chicago v. Rumsey*, 87 Ill. 348; *Reading v. Althouse*, 93 Pa. St. 400; *Pusey v. Allegheny*, 98 Pa. St. 523; *Lycoming v. Moyer*, 99 Pa. St. 615; *Transportation Co. v. Chicago*, 9 Otto 635. The eastern boundary of the corporation of St. Louis extends to the middle of the main channel of the Mississippi River. *Jones v. Soulard*, 65 U. S. 41; *Schools v. Risley*, 77 U. S. 91. The proprietor of land on the Mississippi River only owns to the water's edge, (*Benson v. Morrow*, 61 Mo. 345,) and the plaintiff acquired no interest in front of the premises occupied by him. His right to navigate the river up to his premises was one to be enjoyed with all mankind. It was not *private* property within the meaning of the constitution of 1865, article 1, section 16. *Thayer v. Railroad Co.*, 125 Mass. 254; *Gould v. Railroad Co.*, 6 N. Y. 522; *Tomlin v. Railroad Co.*, 32 Ia. 106, Under the leases to plaintiff, he possessed no riparian rights. It is apparent from the description in it that Front street intervened between the lot in question and the river. Where granted premises are bounded in terms by a public road which separates them from the water, they extend only to the center of the road, and the grantee is not a riparian proprietor. Gould on Waters, 276, 288; *Banks v. Ogden*, 2 Wall. 57; *Saulet v. Shepherd*, 4 Wall. 502; *People v. Colgate*, 67 N. Y. 512; *Allegheny City v. Morehead*, 80 Pa. St. 118; *Allen v. Munn*, 55 Ill. 486. The damages are flagrantly excessive; the jury awarded plaintiff the enormous sum of $35,000 as damages to a leasehold estate having but five years to run, he fee simple value of which did not exceed $10,000.

*Glover & Shepley* for respondent.

A riparian owner upon a public river has a property right in the stream, being the benefit to him of the use of the water and shore as a landing or shipping place or wharf of his own, should he see fit to construct one, and no person can with impunity destroy, encroach upon or impair (against his will) this riparian property. 1 Dillon Munic. Corp. §§ 70, 72; *Yates v. Milwaukee*, 10 Wall. 497. The question is, not whether the public also have rights, but whether riparian owner has rights. *Railroad v. Schurmeier*, 7 Wall. 272; *Dutton v. Strong*, 1 Black 25; *Natoma, etc. v. McCoy*, 23 Cal. 490; *Newhall v. Iveson*, 8 Cush. 595; *Cowley v. Kidder*, 24 N. H. 364; *Clement v. Burns*, 43 N. II. 609; *Wadsworth v. Tillotson*, 15 Conn. 366, 373; *Thurman v. Morrison*, 14 B. Mon. 367. Angell on Watercourses (6 Ed.) 741, section 553, says the banks of navigable rivers in Missouri are public highways owned by private persons, though subject to a reasonable and temporary use by the public. *O'Fallon v. Daggett*, 4 Mo. 343. The distinction between public rivers and rivers not public is immaterial to this case. By the common law, the right of the riparian owner in the soil extends to the middle line of the stream of a non-public river. The United States Supreme Court decided that it extended to the middle line of the Mississippi River. *Jones v. Soulard*, 24 How. 65; *Benson v. Morrow*, 61 Mo. 345. But whether it extends to the margin or middle line of the river in this case, or not, the riparian owner has specific and absolute rights, which cannot be taken from him arbitrarily. Among these rights are, " access to the navigable part of the river from the front of his lot, the right to make a landing, wharf, or pier for his own use, or for the use of the public." *Yates v. Milwaukee, supra*; *Piersall v. Post*, 22 Wend. 425. The plaintiff's ownership in the use of the shore and stream being property, it could not be taken from him without

24 – 82

just compensation. Cons. Mo. 1875, Art. 1, § 16. That the plaintiff was entitled to compensation before his property could be taken is provided for by the city charter. Rev. City Ord. 1871, p. 70, Art. 3, § 8. In every case of encroachment upon the soil of the riparian owner, or diversion of the flow of his water, if the person who thus interferes will not employ the means of appropriating the property by condemnation, and compensation to the owner, the riparian owner may have his action for damages. *Stein v. Burden*, 24 Ala. 130 ; *Cogswell v. Essex, etc.*, 6 Pick. 94 ; *Piersall v. Post*, 22 Wend. 425 ; *Gates v. Blinco*, 2 Dana 158. Whatever partially destroys or diminishes this right of the riparian owner is a taking of it, in the meaning of the constitution, and for every such injury the owner is entitled to compensation. *Glover v. Powell*, 10 N. J. Eq. 211, 229 ; *Hooker v. New Haven, etc.*, 15 Conn. 312 ; *Denslow v. New Haven, etc.*, 16 Conn. 98 ; *The People v. Canal, etc.*, 13 Wend. 355 ; *Walker v. Board, etc.*, 16 Ohio 340 ; Angell on Watercourses (6 Ed.), § 541. When power is given by statute to take private property for public use, the power must be strictly pursued. *Newark v. Elmer*, 9 N. J. Eq. 754 ; *Renwick v. Morris*, 3 Hill 621 ; *Hogg v. Zanesville*, Wright (Ohio) 130 ; *Knox v. Challoner*, 42 Me. 150 ; *Ellis v. Railroad Co.*, 51 Mo. 200 ; *Cunningham v. Railroad Co.*, 61 Mo. 33. The building of the dyke in question was not an exercise of any power conferred by the Charter. Power to open, improve, or repair a wharf or river-harbor is no authority to build a dyke into and across the channel of the river. There is no power in the city to create a nuisance or impair the navigation. The first step to be taken by the defendant to establish a wharf on plaintiff's property was to pay him for it; the second was to comply strictly with its power to improve the wharf, taking care not to obstruct navigation. *Knox v. Challoner*, 42 Me. 150 ; *Renwick v. Morris*, 7 Hill 575 ; *Hogg v. Zanesville*, 5 Ohio, 410 ; *Spooner v. McConnell*, 1 McLean 352 ; *Works v. Junction R. Co.*, 5 McLean 426 ; *Columbus v. Curtenius*, 6 Mc-

Lean 209; *Williams v. Beardsley*, 2 Cart. 591; *Ill. River, etc., v. Peoria Bridge*, 38 Ill. 467.

*Myers & Arnstein* also for respondent.

The plaintiff, as a riparian owner on the Mississippi River, had the right of exclusive access to and from his lot, to and from the navigable waters of the river, and the right to have the river flow by his land as it flowed by nature. That right was property, within the protection of the constitutional provision which prohibits the taking of private property for public use without compensation. *Lyon v. Fishmongers' Co.*, L. R. 1 H. L. Cas. 662; *Delaplaine v. Railroad Co.*, 42 Wis. 214; *Yates v. Milwaukee*, 10 Wall. 504; *Avery v. Fox*, 1 Abb. (U. S.) 246; *Baron & Craig v. Mayor and City Council of Baltimore*, 2 Am. Jur. 203; Cooley's Const. Lim., 557; *Bowman v. Wathen*, 2 McLean 376, 383; *Chapman v. Railroad Co.*, 33 Wis. 629; *People v. Canal Appraisers*, 13 Wend. 355, 371; *Ryan v. Brown*, 18 Mich 196, 211; *Duke of Buccleuch v. Metropolitan Board of Works*, L. R. 5 H. L. Cas. 418; *Metropolitan Board of Works v. McCarthy*, L. R. 7 H. L. Cas. 243. The dyke was not a mere temporary inconvenience, but a permanent structure, which worked the absolute destruction of plaintiff's property. The plaintiff owned at least to the water's edge, if not to low-water mark. The original grant from the State called for the river as the eastern boundary, and plaintiff's title followed the river when thrown east by the dyke. He was entitled to the accretions. The State could set up no intervening title, nor do anything to derogate from or impair its grant. *Clement v. Burns*, 43 N. H. 609, 617; *O'Fallon v. Daggett*, 4 Mo. 343; *Smith v. St. Louis Public Schools*, 30 Mo. 290; *Schools v. Risley*, 10 Wall. 110; Houck on Rivers, § 168, et seq; *Kraut v. Crawford*, 18 Ia. 549; *Baltimore & Ohio R. R. Co. v. Chase*, 43 Md. 23; *Lockwood v. Railroad Co.*, 37 Conn. 387; *Jones v. Soulard*, 24 How. 51; *LeBean v. Gavin*, 37 Mo. 556; *Public Schools v. Risley*, 40

Mo. 356; *Benson v. Morrow*, 61 Mo. 345. The mud deposit created by the city between the bluff bank and the water's edge, as located after the building of the dyke, was, therefore, on plaintiff's land, and was itself a "taking" of plaintiff's property. Anything which permanently destroys or impairs the use is, *pro tanto*, a "taking" *Eaton v. Railroad Co.*, 51 N. H. 511; *Baron & Craig v. Mayor and City Council of Baltimore*, 2 Am. Jur. 203; *Lackland v. Railroad Co.,* 31 Mo. 181; *People v. Canal Appraisers*, 13 Wend. 392; *Pumpelly v. Green Bay Co.*, 13 Wall. 166; *Bell v. Hull & S. R. Co.*, 6 Mee. & W. 699, and authorities cited under first point. The legislature could not authorize the city to take plaintiff's property without compensation to him. Article 1, section 16 of the constitution prohibited it. The legislature did not assume to authorize such an act without compensation. On the contrary, in the city charter it expressly required compensation to be made. Art. 7, § 1 of City Charter, (Laws 1870, p. 478.) The dyke being built without the authority of congress "across the channel" of the river, was, *per se*, a public nuisance, and plaintiff having suffered a special injury therefrom, was entitled to recover on that ground. *Pennsylvania v. Wheeling Bridge Co.*, 13 How. 518; *Atlee v. Packet Co.*, 21 Wall. 389; *s. c.*, 2 Dill. 479; *Franklin Wharf Co. v. City of Portland*, 67 Me. 46; *Plank Road Co. v. Elmer*, 9 N. J. 754; *People v. Vanderbilt,* 38 Barb. 282.

SHERWOOD, J.—Action for damages done to plaintiff as the owner of certain riparian rights on the Mississippi river in the city of St. Louis. He was the owner of a certain leasehold, on which his saw-mill was situated, and the injury complained of consisted in the so-called improvements in the shape of a dike, or something of that sort, which the city had built, extending out into the channel of the Mississippi river several hundred feet, thereby filling up the channel at that point and causing such a deposit of sediment or mud next to the shore as effectually destroyed the

landing place which plaintiff had been accustomed to use
for the purpose of bringing logs to the shore in front of his
mill, and caused also the submersion and loss of his logs.
The lease under which plaintiff claimed, is in these words:
" A lot of ground in St. Ange addition to the city of St.
Louis, a plat whereof is on file, etc.,    *    *    having
a front of 162 feet on Front street, as laid out on said plat,
and extending west to Second street, excepting a sixty foot
street called First street, and an alley between said First
and Second streets, which said street and alley are to be
left open for public use; bounded north by land of Harney,
east by the Mississippi river, south by Bryan street and
west by Second street, as laid out by said plat, in block No.
—, in the city of St. Louis."

Under a proper construction of this lease we have no
doubt that the plaintiff was the possessor of riparian rights.
It is true that in the lease the recital is made that the lot of
ground has " a front of 162 feet on Front street," etc.; but
this recital, in our opinion, constitutes no part of the metes
and bounds of the lot, and is by no means inconsistent with,
or repugnant to that portion of the lease in which the
boundaries of the leased ground are definitely and distinctly
described. Besides, one of the first rules of construction,
in case of ambiguity arising in a deed, is that natural
monuments and objects called for in the deed shall control,
though they should conflict with the courses and distances
called for in the deed. And when such deed, in its descrip-
tion of the grant of land made, calls for a river as a bound-
ary, this call will prevail. *Shelton v. Maupin*, 16 Mo. 124;
3 Washburn R. Prop., pp. 405, 406, 407, 408, and cases cited.
And if doubt as to the intention of the parties to the deed
in question should still remain, resort could be had to the
surroundings of the parties at the time the lease was
executed. *Ib.*, 404; 1 Greenlf. Ev., § 288. The land leased
had been in the possession of Mrs. Boyce, the lessor, since
1851. It had been leased by her to Ludlow & Co. many years,
and that firm had built a saw-mill on it and had used the

facilities furnished by the river for getting saw logs to the mill, just as Myers & Vollkamp, their successors, continued to do after the lease was made to them.    Taking all these things into consideration, it would seem impossible to differ as to the proper conclusion to be reached touching the force and effect of the terms employed in the 'lease.    Counsel for defendant cites us to the case of *Schools v. Risley*, 10 Wall. 91, as deciding that calls for the Mississippi river, in conveyances from one private individual to another for lots in St. Louis, give no riparian rights to the grantee.    The syllabi of that case do decide that point, but the opinion of the court does not.    The only point in judgment there, was that if the property owned 'by the defendant, a certain block, was bounded on the east by a street, passage-way or tow-path, that then the defendant was not the possessor of riparian rights, and of consequence not entitled to the right of accretion as incident to those rights; but that such rights were possessed by the defendant, if the river, when the town of St. Louis was laid out, and when the act of confirmation has passed, constituted the eastern boundary of the block.    This view of that case and what it decided certainly accords with the authorities cited therein with approval; *Jones v. Soulard*, 24 How. 41; *Smith v. Public Schools*, 30 Mo. 301; *LeBeau v. Gaven*, 37 Mo. 556; and with the view taken in the same case in this court [40 Mo. 358], the judgment of this court being affirmed on appeal, where it is expressly decided, reference being made to the same authorities, that if the river is the boundary of a town lot it will be riparian as much as would a tract of land in the country.    This view accords also with that taken in *Yates v. Milwaukee*, 10 Wall. 497, where it is held that the owner of land bounded by a navigable river has certain riparian rights, whether his title extends to the middle of the stream or not.

The force and effect of the terms of the lease to Myers & Vollkamp were not discussed in the court of appeals, and the point already noticed seems to have been presented in

this court for the first time.  No doubt is entertained by us that plaintiff's leasehold extended to the Mississippi River and that he was the owner of all such rights as the law will imply from that fact.  On this point, and so far, we are all agreed ; but a majority of the members of this court regard the injuries which plaintiff suffered as consequential merely, and that, therefore, he cannot maintain his action.  I concede that if the damage suffered by plaintiff, as the result of the acts of the city, were of that nature, that no recovery could be had by him, and such was our ruling in the last utterance of this court on that subject.  *Broadwell v. City of Kansas*, 75 Mo. 213.  In that case a recovery was allowed by us on the ground that the injury declared on was not consequential but a direct physical invasion of the property of the complainant.  I think, considering the nature of the property, that the taking in this case is equally direct as in that, and as much forbidden by the constitution, and that the destruction of riparian rights is a taking.  On this point I entirely concur with Judge Bakewell of the court of appeals, where he says :  " When it is settled that riparian rights are property, and of this there seems to be no doubt, the question as to the right to take them without compensation is at an end."  *Myers v. City of St. Louis*, 8 Mo. App. 266.

The authorities cited by the respective parties to this controversy need not be discussed.  It is sufficient to say that they have been examined by us, and differing conclusions have been reached, as already stated.  Owing to the view taken by a majority of the members of this court that the damages complained of by plaintiff were not of such a nature as to be within the protection or prohibition of the constitution of this State, the judgment as well of the court of appeals as of the circuit court must therefore be reversed ; in which reversal I do not concur.

HENRY, J.—In the opinion delivered in this case by Sherwood, J., for the court, the facts are not sufficiently

stated to show the grounds upon which the judgment of the court of appeals was reversed. The construction of the dike in question was authorized by an act of the general assembly of this State and the injury sustained by plaintiff was not the immediate consequence of its construction, but was the result of deposits of sediment from time to time, not culminating in the injury complained of until months after the construction of the dike. The saw-logs were not immediately submerged, nor was the riparian right claimed by plaintiff immediately affected by the construction of the dike. I may add, also, that the dike was constructed in 1874, before the new constitution went into effect, and there is no allegation that it was negligently or carelessly constructed, but only that it was an unlawful and unauthorized act.

RAY, J.—I do not concur in the opinion of the majority of the court, nor indeed with some of the views expressed by Sherwood, Judge, in his opinion.

In order to the affirmance of this judgment it is not necessary upon the facts of this record to inquire or determine whether there has been a taking of private property for public use without just compensation, but it is sufficient if it appears, as it clearly does, that the act complained of is a wrongful act, and has been done without competent authority. The petition charges that "defendant unlawfully caused a certain dike, composed of limestone and other materials, to be built in said river, commencing at the foot of said Bryan street and extending thence eastwardly a distance of over 700 feet, into and across the said natural channel of said river, said dike being about twenty feet broad and extending from the bed to the surface of said river, which said dike was an obstruction to the navigation of said river, and was built against the protest of plaintiff and without warrant of law." If that be so, and it further appears, as the record abundantly shows, that the plaintiff in consequence thereof, has sustained a special damage peculiar

to himself, then he is entitled to recover. In such cases it is wholly immaterial whether the injury be to person or property, direct or consequential. Wood on the Law of Nuisances, § 621. If the river in which the dike in question was built had been an inland stream over which the State of Missouri had exclusive jurisdiction, then the positions contended for, and the authorities cited might have been applicable to this case. Wood on Law of Nuisances, §§ 302 and 596.

In the case at bar, however, the Mississippi river being a public navigable river of the United States, and a highway of commercial intercourse between the states, the general government has the ultimate and paramount jurisdiction; and the dike in question being an obstruction materially interfering with its navigability, and the defendant failing to show any such competent authority to construct the same, he is, therefore, liable to the plaintiff for such special damage peculiar to himself as he may have sustained by reason thereof, whether direct or consequential. If the dike in question had been shown by the evidence to have been but a slight obstruction to navigation then, perhaps, under the limited and subordinate jurisdiction of the State, it would not be regarded as a nuisance if the public benefit therefrom is equal to the inconvenience created to navigation. But this qualification is subject to the restriction that the State may not authorize a material obstruction to navigation. When such an obstruction, materially interfering with the use of the steam for the purposes of public passage, is erected even under authority from the State it is, at least, so far a nuisance that the party erecting it will be liable for all damages resulting therefrom to individuals; and the authority conferred by the State in such cases is no protection or defense to the action. Wood on Law of Nuisances, § 596, 597, 621 and authorities there cited.

I am, therefore, of the opinion that the judgment of the court of appeals should be affirmed.

## On Rehearing.

SHERWOOD, J.—The cause has been re-argued. From that re-argument I have been more than ever convinced that the judgment recovered by the plaintiff in the circuit court and afterwards affirmed in the court of appeals is based on the most solid foundations of reason and authority. In the opinion of the court of appeals the subject of the destruction of riparian rights and the reciprocal right of compensation for such destruction has been fully discussed, and reference made to numerous authorities, which abundantly sustain the position of the plaintiff here, and I simply refer to them and to other authorities cited for plaintiff in this court as fully applicable to the facts of this case, and as sustaining in a very satisfactory way the opinion of the court of appeals. The whole subject may be summarized thus :

The plaintiff was the possessor of certain riparian rights. These rights were property. Of that property he could not be deprived without just compensation, nor could the State itself either exercise such a power of deprivation or confer it upon some subordinate municipality dissevered from the constitutional condition of compensation for the property taken. And the destruction of the property right in question was a taking within the meaning of the constitution of 1865, and of the authorities cited on behalf of plaintiff.

On the original argument the point was made for defendant that a recovery was had for damages done after suit brought. This is not true in point of fact. The injury was done prior to suit brought, but the full consequences thereof did not appear until resort was had to the courts for redress. The case in this respect is not unlike the case of injury to a person where a blow is received before suit brought, but where the full extent of the injury done does not make itself manifest until long after action begun. But for all

that, the injury is none the less direct, none the less concurrent and contemporaneous with the blow, though the damage done is not at once fully apparent.

For these reasons the judgment of the court of appeals affirming that of the circuit court should be affirmed. NORTON and RAY, JJ., concur; HOUGH, Chief Justice, and HENRY, J., dissent.